UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:                        }
                              }
TRACY L. THREATT,             }        Case No. 13-41615-JJR-13
                              }
        Debtor.               }

_____

## OPINION AND ORDER DENYING PLAN CONFIRMATION

Findings and Conclusions

The Debtor's amended chapter 13 plan (Doc. 40 and herein, the "Plan") came before the Court for confirmation. The Trustee objected to confirmation and moved to dismiss the case (Doc. 49) on several grounds including, *inter alia*, the excessive length of the Plan's term and the Debtor's proposal to retain a more expensive and newer automobile – a 2012 Toyota Camry – while surrendering a less expensive and older vehicle – a 2002 Dodge Stratus. According to the Trustee's objection, if the Toyota is surrendered to its secured creditor rather than the Dodge, the Debtor has the ability to pay her unsecured creditors approximately 100% over 3 years, while the Plan as now proposed will pay only 35% of unsecured claims over 5 years. In light of the Debtor's proposal to retain the more expensive vehicle at the expense of her unsecured creditors, the Trustee also questions whether the Plan was proposed in good faith as required for confirmation under section 1325(a)(3) of the Bankruptcy Code (11 U.S.C. § 101 *et seq.* and herein, the "Code"). The Court agrees with the objections raised by the Trustee and will deny confirmation of the Plan.

The Debtor's Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Doc. 8) disclosed that her income is below the applicable

1

median.  Thus, Code § 1322(d)(2) limits the term of her Plan to 3 years unless the Court finds cause for a longer term, not to exceed 5 years.  The Debtor complains she cannot afford the payments needed to pay the balance owing on her Toyota if they must be paid over a 3-year term, and argues there is good cause for her 5-year Plan because it will spread those payments over a longer amortization and thereby reduce the payments to an amount she can afford.

According to the Debtor's Schedule D (Doc. 6), she purchased and financed the Toyota in August 2012, a little more than a year before she filed this bankruptcy case on September 12, 2013.  The purchase-money debt owing on the Toyota is $22,276.89, which, according to the Debtor's schedules, is also the value of the car.  The schedules do not disclose when the Debtor acquired the Dodge, but we do know she owned it at the time she financed the purchase of the Toyota.  The Debtor used the Dodge to secure a non-purchase-money loan in February 2013, only 7 months before she filed chapter 13.  The loan secured by the Dodge has an unpaid balance of $3,229, which is also claimed to be the car's value.  The only other secured debt listed on Schedule D is a purchase-money loan secured by a bedroom suite incurred in March 2013, with an unpaid balance of $520.

The Debtor's amended Schedule F (Doc. 31) discloses her unsecured debts total $6,209.46.  She owes $587.50 to Advance America for a loan made in August 2012 and renewed August 29, 2013; $352.50 to Always Money for a loan made in January 2013 and renewed August 30, 2013; $4,279.46 to Heritage South Credit Union for a loan made March 22, 2013; and $990.00 to Regional Finance Corporation for a loan made April 12, 2013. The Debtor also owes a small priority claim for 2012 State taxes of $287.94.  All the Debtor's debts – secured, unsecured and priority – were incurred after or, in the case of Advance America, at approximately the same time she acquired the Toyota.

2

The Debtor is single and has no dependents. When she filed her petition for relief she had been employed by Alabama State University for 3 months. According to her testimony, she was previously employed at Walmart, but resigned when she took a job with the University because it offered more reliable and consistent hours. She also testified that when she purchased and financed the Toyota she worked three part-time jobs in addition to her job at Walmart. She stated that she resigned from two of her part-time jobs but still worked at one, although the Court could find no part time employment disclosed on Schedule I (Doc. 6).

It appears the Debtor's financial woes began with her purchase of the Toyota and were exacerbated when she started borrowing money and stopped her part-time employment. Her purported reason for purchasing the Toyota was that she was having mechanical problems with the Dodge; but her testimony was vague and less than credible when questioned about exactly what those problems were, and even more so when asked what the costs would have been to repair the Dodge. Perhaps the Dodge needed some repairs, but the Court is confident the cost for whatever repairs might have been needed to put the Dodge in good working order would have been far less than the $25,000 purchase price of the Toyota.[1] As mentioned, the Debtor's borrowing spree came after she purchased the Toyota, leading the Court to conclude that she never could afford the Toyota from the outset and used borrowed money to make ends meet until her credit ran out. Furthermore, it appears the impetus for purchasing the Toyota was the appeal of driving a newer car, not whatever mechanical issues the Debtor was having with her Dodge. After all, she did not trade-in the Dodge or otherwise dispose of it when she purchased the Toyota, and she pledged the Dodge to obtain a substantial loan a few months before seeking bankruptcy relief.

---

[1] See proof of claim number 7 filed by the Toyota's secured creditor, World Omni Finance Corp.

Case 13-41615-JJR7    Doc 51    Filed 01/21/14    Entered 01/21/14 15:13:10    Desc Main
Document      Page 3 of 8

There is no per se rule against an extension beyond 3 years for plans proposed by under-median-income debtors. However, Code § 1322(d)(2) allows for an extension of the statutorily preferred 3-year commitment period only upon a showing of "cause" – not just any cause or excuse, but *good* cause. As this Court noted in *In re Davis*, 2012 WL 3239204 (Bankr. N.D. Ala. 2012), the Eleventh Circuit explained the 3-year maximum period for below-median debtors by saying, "Section 1322(d) delineates the maximum periods of time for a Chapter 13 bankruptcy while § 1325(b)(4) sets out the minimum periods of time for Chapter 13 bankruptcy, with both the minimums and maximums contingent upon the debtor's classification as an above median or below median income debtor." *In re Tennyson*, 611 F.3d 873, 878 (11th Cir. 2010).

Before the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),[2] the "cause" requirement for extending a plan beyond 3 years was found in then-§ 1322(c), which applied to all debtors and read, "The plan may not provide for payments over a period that is longer than three years, unless the court, for cause approves a longer period, but the court may not approve a period that is longer than five years." In examining the "cause" requirement, and its addition in The Bankruptcy Reform Act of 1978, one court explained:

> Section 1322(c) had no counterpart under chapter XIII of the former Bankruptcy Act. The legislative history explains why Congress limited the length of chapter 13 plan to five years and only for cause.
>
> > [Under chapter XIII of the Act], in certain areas of the country, inadequate supervision of debtors attempting to perform under wage earner plans have made them a way of life for certain debtors. Extensions on plans, new cases and newly incurred debts put some debtors under court supervised repayment plans for seven to ten years. This has become the closest thing there is to indentured servitude; it lasts for an indentifiable [sic] period and does not provide the relief and fresh start for the debtor that is the essence of modern bankruptcy law.
>
> H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 117 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6078 (footnote omitted).

---

[2] Pub. L. 109-8, 119 Stat. 23 § 318 (April 20, 2005).

4

The Code contains no definition of the "cause" necessary for the extension of a plan to five years. Collier suggests that a debtor's inability to cure a default under section 1322(b)(5) or to pay priority or allowed secured claims in a shorter time should be grounds for approving plans longer than three years. 5 Collier on Bankruptcy ¶ 1322.15 (15th ed. 1986) ("Collier").

*In re Fries*, 68 B.R. 676, 679 (Bankr. E. D. Pa. 1986) (examining legislative history and finding "cause" where debtors needed more than 36 months to pay priority claims, secured claims, and mortgage delinquencies as well as paying 20% to unsecured creditors). *See also Hart v. Bowers*, 2001 WL 34076355 (C.D. Ill. 2001) (affirming as not clearly erroneous the bankruptcy court's determination that Debtor failed to establish "cause" to extend case beyond 36 months, where debtor proposed to pay for a car but was paying little unsecured debt and not saving a home or paying priority claims); *and see In re Norris*, 165 B.R. 515 (Bankr. M.D. Fla. 1994) (holding that then-§ 1322(c) "creates a 36-month standard time period for a chapter 13 plan and allows for a longer period only in unusual circumstances" – cause in that case was a large priority tax claim that debtors could not pay in 36 months).

After the passage of BAPCPA, the "cause" requirement to extend a plan beyond 3 years is now applicable only to debtors with below-median income as part of § 1322(d)(2). In contrast to above-median debtors, below-median debtors were not targeted by Congress as part of BAPCPA and are not subject to the 5-year commitment now required of above-median debtors who are paying less than 100% of allowed unsecured claims. Code § 1325(b)(4). The legislative history makes this clear:

> Sec. 318. Chapter 13 Plans To Have 5-Year Duration in Certain Cases. Paragraph (1) of section 318 of the Act amends Bankruptcy Code sections 1322(d) and 1325(b) to specify that a chapter 13 plan may not provide for payments over a period that is not less than five years if the current monthly income of the debtor and the debtor's spouse combined exceeds certain monetary thresholds. If the current monthly income of the debtor and the debtor's spouse fall below these thresholds, then the duration of the plan may not be longer than three years, unless the court, for cause, approves a longer period of up to five years. The applicable commitment

period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter period. Section 318(2), (3), and (4) make conforming amendments to sections 1325(b) and 1329(c) of the Bankruptcy Code.

H.R. Rep. 109-31(I), p. 79, 2005 U.S.C.C.A.N. 88, 146 (as quoted in *Tennyson*, 611 F.3d at 879).

This Court does not find good cause for an extension beyond the statutorily preferred 3-year term for an under-median-income debtor's plan merely to ameliorate the amortization of a secured automobile loan that the debtor could ill afford when the vehicle was purchased, and in which there is little or no equity. This Court's view might be different if following the purchase and financing of an automobile originally within a debtor's budget, an unforeseeable event beyond her control caused her financial circumstances to materially change for the worse. That is not what happened here. As mentioned, the Debtor did not trade-in or otherwise dispose of the Dodge when she purchased the Toyota; for over a year the Debtor – a single woman with no dependents – owned and maintained two cars. Ultimately she pledged the Dodge to secure a loan for the car's full value and soon thereafter sought relief under Chapter 13. There was no unforeseeable intervening adverse event beyond her control that occurred between her purchase of the Toyota and her bankruptcy: no involuntary job loss, divorce, medical bills or the like. Furthermore, it is undeniable that retaining and paying for the Toyota will come at the expense of unsecured creditors, who will be paid only 35% under the 5-year Plan as now proposed, but will enjoy a 100% recovery if the Toyota is surrendered and there will be no need to extend the Plan's term beyond the limit intended by Congress as the norm.

The Debtor needs to pay whatever she reasonably can to her unsecured creditors and conclude her case with a discharge and financial fresh start within the shortest time possible – the

6

Case 13-41615-JJR7    Doc 51    Filed 01/21/14    Entered 01/21/14 15:13:10    Desc Main
Document      Page 6 of 8

ultimate goal for individual bankruptcies.[3] Perpetuating a bad credit decision that will significantly reduce what is paid to unsecured creditors not only demonstrates a lack of cause for an extension of the Plan's term beyond 3 years, it also falls short of the good faith standard required for plan confirmation under Code § 1325(a)(3).

The solution was simple: The Debtor should have retained the Dodge, surrendered the Toyota and paid her unsecured debts within the standard 3-year term. The solution *was* simple, but that opportunity may have been lost. At the hearing on confirmation, the Court was informed that the Debtor, apparently operating under an unwarranted assumption that the Court would confirm her Plan as proposed, had already voluntarily surrendered the Dodge to its secured creditor. Surrendering the Dodge appears to have been premature, and a gamble that will not be considered as cause to confirm an otherwise ill-conceived Plan.

Order

Accordingly, for the reasons stated above, the Trustee's Objection (Doc. 49) to confirmation is SUSTAINED, and confirmation of the Plan (Doc. 40) is hereby DENIED. The Debtor shall be allowed 14 days from entry of this Order to propose, in good faith, an amended,

---

[3] The Eleventh Circuit recently expounded upon the fundamental objectives of the bankruptcy system, which include the discharge: "To begin with, the [Supreme] Court provided guidance by setting forth the three *critical* in rem functions of bankruptcy courts: '[1] the exercise of exclusive jurisdiction over all of the debtor's property, [2] the equitable distribution of that property among the debtor's creditors, and [3] the ultimate discharge that gives the debtor a "fresh start" by releasing him, her, or it from further liability for old debt." *State of Florida v. Diaz (In re Diaz)*, 647 F.3d 1073, 1084 (11th Cir. 2011) (quoting *Central Virginia Community College v. Katz*, 546 U.S. 356, 363-64 (2006) (emphasis added)).

feasible plan with a 3-year term.  If no amended plan is timely filed, this case will be dismissed without further hearing or order.

So done and ordered this 21st day of January 2014.

/s/ James J. Robinson
JAMES J. ROBINSON
U.S. BANKRUPTCY JUDGE

8